**F I L E D**

**UNITED STATES COURT OF APPEALS**

December 20, 2006

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CLINTON ODELL WEIDNER, II,

Defendant - Appellant.

No. 06-3204

D. Kansas

(D.C. No. 02-cr-40140-JAR)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McWILLIAMS**, and **McCONNELL**, Circuit Judges.

This is Clinton Odell Weidner II's second appeal of his sentence on six convictions arising out of a fraudulent bank transaction. On his first appeal we reversed his sentence of 78 months' incarceration and remanded for resentencing because the district court had committed an error under the United States Sentencing Guidelines (USSG) and because the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005), had rendered the

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Guidelines advisory. *See United States v. Weidner*, 437 F.3d 1023, 1047-50 (10th Cir. 2006). On remand the district court imposed a 60 months' sentence. Mr. Weidner appeals, contending that the district court violated our instructions from the first appeal. We disagree and affirm.

At the time of his offense in 2001, Mr. Weidner was president, chief executive officer (CEO), and general counsel of Capital City Bank in Topeka, Kansas; David C. Wittig was a Bank customer and president, chairman of the board, and CEO of the state's largest utility company. Mr. Weidner wanted to invest $1.5 million in a real-estate project in Arizona. He needed to borrow the money but the Bank did not allow such large loans to employees. He therefore sought and obtained Mr. Wittig's assistance. He arranged for an increase to Mr. Wittig's line of credit, ostensibly for renovations to Mr. Wittig's Topeka home. Mr. Wittig accepted the credit-line increase at an interest rate of 5.39%. The sum of $1.5 million was posted to his account, and on the same day $1.5 million was withdrawn and deposited with a title company in Arizona as Mr. Weidner's investment in the real-estate project. The next day Mr. Weidner signed a promissory note in which he agreed to repay Mr. Wittig $1.5 million within a year at an interest rate of 7%. Both men failed to disclose this loan on various Bank documents. When the improper loan was discovered a few months later, Mr. Weidner had a friend transfer $1.5 million to his partner in the real-estate project, who in turn transferred $1.5 million to Mr. Wittig, who then paid

down his line of credit at the Bank. Mr. Weidner resigned from the Bank in April 2002, and Mr. Wittig paid off his line of credit in June 2002.

Mr. Weidner and Mr. Wittig were each charged with one count of conspiracy, four counts of making a false bank entry, and one count of money laundering. Before trial Mr. Weidner pleaded guilty to two counts of making a false bank entry. A jury convicted Mr. Weidner on the remaining four counts and Mr. Wittig on all counts.

To determine the appropriate sentence under the then-mandatory Guidelines, the district court applied the 2002 version of the Guidelines. Under USSG § 2B1.1(a) (2002) the base offense level was 6. Section 2B1.1(b)(1) increases the offense level for large pecuniary losses, regardless of whether the loss was actual or merely intended. *See id*. cmt. 2(A). The court determined that Mr. Weidner and Mr. Wittig had each intended a loss to the Bank of $1.5 million, which added 16 to the offense level, *see id*. § 2B1.1(b)(1), raising it to 22. It then applied the Guidelines gross-receipts enhancement, which provides, "If the defendant derived more than $1,000,000 in gross receipts from one or more financial institutions as a result of the offense, increase by 2 levels. . . . If the resulting offense level . . . is less than level 24, increase to level 24." *Id*. § 2B1.1(b)(12)(A) & (B) (2002) (renumbered as § 2B1.1(b)(13)(A) & (D) in the 2006 version). The court determined that each defendant had gross receipts of $1.5 million, leading to an offense level of 24. (Because the gross-receipts

enhancement by itself would raise the offense level to 24, the intended-loss enhancement did not affect the ultimate offense level.)  The court then increased Mr. Weidner's offense level by four, adding two levels for obstruction of justice, *see id*. § 3C1.1, and two for abusing a position of trust, *see id.* § 3B1.3, resulting in a total offense level of 28. Both defendants were in criminal-history category I, so Mr. Weidner's Guidelines sentencing range was 78 to 97 months and Mr. Wittig's range was 51 to 63 months.  The court sentenced Mr. Weidner to 78 months' imprisonment and Mr. Wittig to 51 months.

Mr. Weidner and Mr. Wittig appealed.  We affirmed their convictions but reversed and remanded both sentences.  We stated that the "district court erred in attributing the $1.5 million in gross receipts to both Mr. Wittig and Mr. Weidner" in light of Guidelines language stating that the sentencing court should consider "'gross receipts to the defendant individually, rather than to all *participants*'." *Weidner,* 437 F.3d at 1046 (quoting USSG § 2B1.1(b)(12) cmt. n.9).  We held that the § 2B1.1(b)(12) enhancement could be applied to Mr. Weidner but not to Mr. Wittig.  We also held that the district court had erred because it "did not adequately consider the amount of collateral provided by Mr. Wittig [for his line of credit] in determining the amount of loss under an intended loss theory." *Id.* at 1048.  Disregard of all collateral pledged was appropriate only after a court "first determine[d] that the defendant intended to deprive the lender of its collateral"; but the district court had made no such finding. *Id.*

On remand the district court imposed sentences of 60 months' imprisonment on both defendants, increasing Mr. Wittig's sentence from 51 to 60 months, and lowering Mr. Weidner's sentence by 18 months. At the resentencing the court, misconstruing our prior ruling on the gross-receipts enhancement, again applied the enhancement to each defendant; it reasoned that Mr. Wittig had received a line-of-credit increase of $1.5 million at an interest rate of 5.39%, while Mr. Weidner had received $1.5 million from Mr. Wittig at 7% interest and then had used the funds to invest in the Arizona real-estate project. The court stated that Mr. Weidner's total offense level was 28 (without detailing how it arrived at that figure, though it was the same offense level as at the prior sentencing) and "tentative[ly]" sentenced him to 60 months' imprisonment. Next it addressed the 18 U.S.C. § 3553(a) factors, supporting its downward variance by noting that Mr. Weidner had suffered the loss of his license to practice law, that the sentence provided adequate deterrence to both Mr. Weidner and others, and that a sentence of 60 months was "just and reasonable." Aplt. App. at 11. It did not address intended loss, stating that the court of appeals had not put that issue before it for consideration on remand.

Mr. Weidner now argues that the district court erred in again attributing the same $1.5 million in gross receipts to both him and Mr. Wittig, and in failing to credit in its gross-receipts calculation the collateral Mr. Wittig had pledged. We reject both arguments.

First, the district court did not err in finding that Mr. Weidner had gross receipts of $1.5 million. Indeed, on the first appeal we affirmed the application of USSG § 2B1.1(b)(12) to Mr. Weidner because he clearly had received more than $1 million in receipts from the unlawful bank loan. *See Weidner*, 437 F.3d at 1047. To be sure, the district court erred on remand when it applied the same $1.5 million gross-receipts enhancement to both Mr. Wittig and Mr. Weidner, but the remedy for this error was to reverse and remand Mr. Wittig's sentence again, which we have done. *See United States v. Wittig*, No. 06-3166, 2006 WL 3378451, at *8 (10th Cir. Nov. 22, 2006). There was no error in applying the enhancement to Mr. Weidner.

As for Mr. Weidner's complaint that the gross-receipts calculation failed to account for the value of the collateral pledged by Mr. Wittig, the collateral is relevant only to an intended-loss calculation. Our discussion of collateral on Mr. Weidner's first appeal related only to the intended-loss Guideline, USSG § 2B1.1(b)(1). But on remand the district court did not apply that provision. The gross-receipts Guideline, § 2B1.1(b)(12), is not affected by the actual or intended loss. It looks to the *gross* receipts, not the *net* receipts or net loss. Therefore, collateral pledged plays no role in the calculation. The district court did not err in disregarding collateral in sentencing Mr. Weidner on remand.

Mr. Weidner's sentence is AFFIRMED. His motion to expedite the appeal

is DISMISSED as moot.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge