**F I L E D**

**PUBLISH**

**December 26, 2006**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 05-2266

DENNYS MATEO,

Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D. Ct. No. CR-04-1219)**

---

Edward O. Bustamante, Albuquerque, New Mexico, appearing for Appellant.

Gregory James Fouratt, Assistant United States Attorney (David C. Iglesias, United States Attorney, and Laura Fashing, Assistant United States Attorney, on the brief), Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **KELLY**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

Dennys Mateo pleaded guilty to one count of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). After correctly calculating the advisory Sentencing Guidelines range of 15 to 21

months' imprisonment, the District Court considered the sentencing factors under 18 U.S.C. § 3553(a), determined that this range was insufficient, and imposed a sentence of 120 months' imprisonment—the statutory maximum. On appeal, Mr. Mateo argues that the District Court erred by considering facts concerning prior arrests that did not result in convictions and maintains that the sentence imposed is unreasonable. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On May 20, 2004, a confidential informant told a Drug Enforcement Administration ("DEA") agent that Mr. Mateo would be involved in a cocaine transaction at 8:00 p.m. at a video store parking lot in Albuquerque, New Mexico. Upon investigation, the DEA agent discovered that Mr. Mateo had been previously convicted of grand theft, a third degree felony, on April 13, 1998, in Miami, Florida. The night of May 20, 2004, the Albuquerque police set up surveillance at the parking lot. When a white BMW matching the description given by the informant arrived, the police approached the car and asked Mr. Mateo, the driver, to step out of the car. As Mr. Mateo complied, the officer observed a revolver in plain view in the side pocket of the driver's side door. The gun was a Smith & Wesson, Lady Smith, .38 caliber five-shot revolver, loaded with five rounds of ammunition. Aware that Mr. Mateo was a felon, officers immediately arrested Mr. Mateo. A search of the vehicle found suspected counterfeit currency but no narcotics.

On June 23, 2004, a grand jury indicted Mr. Mateo on a single count charging him with being a felon in possession of a firearm and ammunition. Mr. Mateo pleaded guilty to the indictment. Subsequently, the probation office prepared a presentence report ("PSR"). The PSR determined Mr. Mateo's base offense level to be 14. *See* United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 2K2.1(a)(6)(A). He received a two-level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, for a total offense level of 12. The PSR placed Mr. Mateo at a criminal history category of III because he had six criminal history points for five prior convictions. Based on the total offense level of 12 and a criminal history category of III, the PSR calculated the advisory Guidelines imprisonment range to be 15 to 21 months. Mr. Mateo filed three objections to the PSR contesting the application of the Guidelines in determining his criminal history category, but he did not object to any of the factual statements included in the PSR, including those detailing the factual circumstances of multiple prior arrests. At a hearing on June 13, 2005, the District Court ruled against Mr. Mateo's objections to the PSR and gave notice to the Government and to Mr. Mateo that it was considering a sentence above the advisory Guidelines range.[1]

The PSR discloses the following information. Mr. Mateo was born in Cuba

---

[1]On appeal, Mr. Mateo does not argue that he was given inadequate notice as to the basis for the District Court's decision to impose a sentence outside of the advisory Guidelines.

in 1972 and lived there until he was granted political asylum in the United States in 1995. The report assessed six criminal history points for five convictions including (1) a 1996 conviction for grand theft of a jewelry store in Oakland Park, Florida; (2) a 1996 conviction for possession of marijuana in Miami, Florida; (3) a 1997 conviction for possession of marijuana in Miami, Florida; (4) a 1997 conviction for grand theft of a home in Miami, Florida; and (5) a 2003 conviction for shoplifting in Albuquerque, New Mexico.

Of particular importance in this case, the PSR discloses the following facts about the 1997 grand theft conviction. In early May 1997, Mr. Mateo and another individual approached an apartment where a man was standing at the front door. Mr. Mateo and his accomplice each aimed a .38 caliber revolver at the victim's head and forced him into the apartment. There, they tied him up with a phone cord and covered his head with a pillow case. Several electronic items were taken from the apartment. Mr. Mateo was arrested on May 14, 1997, a few days after the incident, and was initially charged with robbery and kidnapping with a deadly weapon. Ultimately, the robbery charge was reduced to a lesser charge of grand theft and the kidnapping charge was dismissed. On April 13, 1998, after pleading nolo contendere to the felony grand theft charge, Mr. Mateo was sentenced to 364 days in the county jail.

In addition to these five convictions, the PSR includes records of seven additional prior arrests that did not lead to convictions, and one additional

pending charge.[2]  Among the prior arrests was one for attempted murder.  The PSR indicates that police arrested Mr. Mateo on May 14, 1997, in Miami, Florida after receiving a report that Mr. Mateo and two other individuals fired a gun four to five times at the victim as he was stopped in his car at a traffic light.  Three rounds struck the victim's vehicle.  The victim explained that the shooting may have been related to the home invasion that had occurred a few days prior (and for which Mr. Mateo was arrested and convicted in Miami).  The subjects were positively identified, but the victim could not indicate which suspect fired the shots.  The prosecutor filed a nolle prosequi on April 13, 1998.

On October 31, 1999, the Texas Department of Public Safety arrested Mr. Mateo for conspiracy to deliver a controlled substance.  The PSR indicates that the case was "rejected" by the District Attorney, but it includes the following information about the factual background of the arrest:

> According to [Mr. Mateo's] signed statement, [Mr. Mateo] agreed to take a van that contained cocaine from Albuquerque, New Mexico to Miami, Florida.  [Mr. Mateo] had two friends drive the van while [he] followed the van in his car.  The van was stopped for a traffic violation and was subsequently searched.  The cocaine was in the form of a brick rolled in a pair of pants inside a plastic bag on the floor.  A few miles later, [Mr. Mateo] was stopped and was found to be in possession of a bag of marijuana.  [Mr. Mateo] took full responsibility for the cocaine and stated to officers his friends did not know the cocaine was in the van.  During a search of the van, officers located a firearm.

---

[2]The PSR actually lists two pending charges.  One of those charges, however, is the charge in this case.

Less than a year later, on August 17, 2000, Mr. Mateo was arrested in New Mexico, and charged in United States District Court for the District of New Mexico with distribution of cocaine, conspiracy, and aiding and abetting. The indictment in this case was dismissed without prejudice on October 11, 2000.

On October 19, 2001, police officers in Albuquerque, New Mexico arrested Mr. Mateo for aggravated battery with a deadly weapon, armed robbery, conspiracy, kidnapping, and tampering with evidence related to a jewelry store robbery in August 2000. According to the PSR, the police reports indicate that witnesses said three Cuban males jumped the counter and robbed the store at gunpoint, pushing one victim onto the floor and putting the barrel of a gun to his head. A confidential informant indicated that Mr. Mateo was involved in the robbery and one of the perpetrators confirmed this information. Mr. Mateo went to trial on these charges, but the court ordered a mistrial after the jury could not reach a verdict. On August 27, 2002, the District Attorney filed a nolle prosequi.

At the sentencing hearing in this case, the Government took the position that the Guidelines are presumptively reasonable, and while not advocating a sentence above the advisory Guidelines range, informed the court that it would support an upward variance if the court imposed such a sentence. Mr. Mateo's attorney maintained that the advisory Guidelines range was reasonable given the facts surrounding the current conviction, and observed that Mr. Mateo's only prior felony conviction for grand theft was not drug related.

After correctly calculating the Guidelines range and acknowledging the advisory nature of the Guidelines after *United States v. Booker*, 543 U.S. 220 (2005), the District Court held that in light of the sentencing factors provided by 18 U.S.C. § 3553(a), the Guidelines range of 15 to 21 months was unreasonable. The court specifically discussed the following § 3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant[.]

*See* 18 U.S.C. § 3553(a)(1)–(2). The court explained its concerns regarding the adequacy of the advisory Guidelines range in relation to the cited sentencing factors by observing that Mr. Mateo's record of fourteen total arrests (including the five for which he was convicted) and two felony convictions in three different states since he arrived in the United States from Cuba in 1995 indicates "a commitment to a criminal lifestyle." The court acknowledged that Mr. Mateo was never convicted of the more serious charges for which he was arrested, including aggravated battery with a deadly weapon, kidnapping, conspiracy, and attempted murder, "but these arrests, in Florida, Texas, and New Mexico demonstrate a pattern of and commitment to a criminal lifestyle by this defendant that is consistent with criminal activity and patterns one typically sees for armed career

-7-

criminals." The District Court imposed a sentence of 120 months' imprisonment, the statutory maximum for the felon-in-possession conviction.

## II. DISCUSSION

Post-*Booker*, we review sentences for reasonableness. *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). "Sentencing decisions must be reversed when a sentence is unreasonable considering the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Cage*, 451 F.3d 585, 591 (10th Cir. 2006). To determine whether a sentence is reasonable, we consider both procedural and substantive aspects of the district court's decision. *See id.* In order to be procedurally reasonable, "a sentence must be 'reasoned,' or calculated utilizing a legitimate method." *Id.* We determine substantive reasonableness by reference to the actual length of the sentence imposed in relation to the sentencing factors enumerated in § 3553(a). *Id.* at 594–95.

A.    The District Court did not err by considering uncontested facts included in

the PSR relating to prior arrests that did not result in convictions.

Mr. Mateo argues that the District Court erred in considering his prior arrests that did not result in convictions in concluding that the advisory Guidelines range of 15 to 21 months was unreasonably low. We find no error in the method by which the District Court determined the advisory sentence to be insufficient punishment for Mr. Mateo.

It is well established that the sentencing court is entitled to rely on

uncontested facts contained in the PSR for certain sentencing purposes. *See* Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . ."); *United States v. Wolfe*, 435 F.3d 1289, 1299 (10th Cir. 2006) ("[W]e recognize that post-*Booker* this court has refused to treat unobjected-to PSR facts as admitted for Sixth Amendment *Booker* purposes. . . . [O]utside the *Booker* context, [however,] we will still rely on unobjected-to facts for other sentencing purposes." (citation omitted)). As we have explained, "*Booker* has not relieved a defendant of his obligation under Rule 32(i)(3)(A) to point out factual inaccuracies included in the PSR." *Wolfe*, 435 F.3d at 1299. Neither in his formal objections to the PSR at sentencing nor on appeal did Mr. Mateo challenge any of the facts included in the PSR, including the facts surrounding his fourteen arrests, two felony convictions, and the pending charge.[3]

Nevertheless, Mr. Mateo argues that the District Court's reference to his prior arrest record violates the Guidelines' policy statement prohibiting the consideration of a "prior arrest record itself" for purposes of an upward departure.

_____

[3]At the sentencing hearing prior to the imposition of sentence, Mr. Mateo made a short statement through a translator. He said, "I would like to tell you, Judge, that I had nothing to do with that case, and that is why I went to trial." This statement apparently refers to the six-count indictment relating to the jewelry store robbery in Albuquerque, New Mexico. On appeal, however, Mr. Mateo does not claim that the facts in the PSR are inaccurate or that the PSR includes information that is not reliable. Instead, he only argues that the court's consideration of his arrests generally is error as a matter of law.

*See* U.S.S.G. § 4A1.3. To this end, he notes that 18 U.S.C. § 3553(a)(5) requires a sentencing court to consider "any pertinent policy statement" from the Guidelines. The sentencing transcript makes clear, however, that the District Court did not rely on Mr. Mateo's arrest record itself in making its determination as to the reasonableness of the advisory Guidelines sentence. Rather, it extrapolated from the uncontested facts in the PSR—including the number, frequency, and seriousness of Mr. Mateo's various arrests and convictions—to draw conclusions about characteristics relevant to sentencing factors enumerated in 18 U.S.C. § 3553(a). *Compare United States v. Dixon*, 318 F.3d 585, 591 (4th Cir. 2003) (holding sentencing court did not run afoul of policy statement prohibiting consideration of "a prior arrest record itself" for purposes of upward departure under U.S.S.G. § 4A1.3(a)(3) when it considered uncontested information in PSR about criminal conduct leading to arrests); *United States v. Williams*, 989 F.2d 1137, 1142 (11th Cir. 1993) (same); *United States v. Torres*, 977 F.2d 321, 330 (7th Cir. 1992) (same); *with United States v. Zapete-Garcia*, 447 F.3d 57, 61 (1st Cir. 2006) (vacating as unreasonable a sentence that was based in part on the mere existence of a decade-old unrelated prior arrest).

The sentencing court is well within its discretion and, indeed, is required to carefully consider the facts contained in the PSR when evaluating the § 3553(a) sentencing factors, including "the history and characteristics of the defendant," and the need for a sentence to "afford adequate deterrence to criminal conduct,"

and "to protect the public from further crimes of the defendant."  18 U.S.C.

§ 3553(a)(1), (a)(2)(B), (a)(2)(C).  We have noted that "[n]o limitation" should be

placed on "the information concerning the background, character, and conduct of

a person . . . for the purpose of imposing an appropriate sentence."  *United States*

*v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005) (quoting 18 U.S.C. § 3661).

Therefore, we conclude that the District Court did not err in considering the

uncontested facts in the PSR relating to Mr. Mateo's prior arrests and by using

those facts to determine the adequacy of the advisory Guidelines sentencing range

in fulfilling the relevant sentencing objectives described in § 3553(a)(2).  *Cf.*

*Zapete-Garcia*, 447 F.3d at 61 (observing that "a series of past arrests might

legitimately suggest a pattern of unlawful behavior even in the absence of any

convictions").

B.      The District Court did not err by making reference to a section of the
        Guidelines that is not applicable under the facts in this case.

In handing down its sentence, the District Court compared Mr. Mateo's

history to that of an "armed career criminal."  An "armed career criminal" is

subject to the enhanced penalties of 18 U.S.C. § 924(e), which imposes a

minimum sentence of 15 years' incarceration for being a felon in possession of a

firearm in violation of 18 U.S.C. § 922(g) if the offender has three previous

convictions for qualifying violent felonies, serious drug offenses, or both.  18

U.S.C. § 924(e)(1); *see also* U.S.S.G. § 4B1.4 (implementing 18 U.S.C. § 924).

When the District Court imposed its sentence, it explained:

> I recognize that the most serious crimes the defendant was arrested for—such as aggravated battery with a deadly weapon, kidnaping, conspiracy, and attempted murder—were all nolle prossed, but these arrests in Florida, Texas, and New Mexico demonstrate a pattern of and commitment to a criminal lifestyle by this defendant that is consistent with criminal activity and patterns one typically sees for armed career criminals.

Mr. Mateo argues that the armed career criminal provision is inapplicable and is not relevant to determining the sentence to be imposed.[4]

In *Cage*, we explained that "[w]hen a district court makes a sentencing decision, it must interpret Congress's intentions in passing sentencing laws." 451 F.3d at 593. We further explained that even though the Guidelines are no longer mandatory, they represent "an expression of popular political will about sentencing that is entitled to due consideration" in fashioning a sentence. *Id.* We

---

[4]The Government does not contend that Mr. Mateo's prior arrests, if they had resulted in convictions, would be sufficient to subject him to the provisions of the armed career criminal statute. We note, however, that Mr. Mateo's 1997 arrest for attempted murder, as well as the October 2001 aggravated battery with a deadly weapon and armed robbery charges arising from the jewelry store robbery, would presumably qualify under the statute as violent felonies. *See* 18 U.S.C. § 924(e)(2)(B)(i)–(ii) (defining a "violent felony" as "any crime punishable by imprisonment exceeding one year . . . that . . . (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) . . . involves conduct that presents a serious potential risk of physical injury to another "). Also, the 1999 arrest for conspiracy to deliver a "brick" of cocaine could have qualified as a serious drug offense under the statute. *See* 18 U.S.C. § 924(e)(2) (defining a "serious drug offense" as "an offense under the Controlled Substances Act (21 U.S.C. § 801 et seq.) . . . for which a maximum term of imprisonment of ten years or more is prescribed by law").

cannot agree with Mr. Mateo's claim that the District Court's reference to the armed career criminal statute is inappropriate when considering what sentence to impose. It is clear that the District Court did not apply the armed career criminal provision to Mr. Mateo because the minimum sentence applicable for such an offender is 15 years' (or 180 months') incarceration. Rather, the sentencing transcript indicates that the court sought guidance from the armed career criminal provision as to the appropriate length of incarceration given Mr. Mateo's criminal history as disclosed by the unchallenged facts in the PSR. The Guidelines are clearly relevant when determining an appropriate sentence, and in this case, the District Court's reference to the Guidelines in searching for a guidepost is not error. *See id.*; *cf. Wolfe*, 435 F.3d at 1304 n.12 ("'[A]nalogizing to other guidelines is a primary method by which district courts may justify the reasonableness of their departure.'" (quoting *United States v. Neal*, 249 F.3d 1251, 1261 (10th Cir. 2001)) (alteration in original)).

C.    The magnitude of the District Court's deviation from the advisory
      Guidelines range was substantively reasonable.

A sentence within the correctly determined advisory Guidelines range is entitled to a rebuttable presumption of reasonableness, *Kristl*, 437 F.3d at 1054, but an "extreme divergence" from the advisory Guidelines range will be reasonable "if the facts of the case are dramatic enough to justify such a divergence," *Cage*, 451 F.3d at 594–95. Mr. Mateo asserts that the length of his

sentence—120 months' incarceration—is unreasonable given that the correctly calculated advisory Guidelines sentence range was 15 to 21 months' imprisonment. We conclude that the magnitude of the District Court's deviation from the advisory Guidelines range, while extreme, was reasonable.

In *Cage*, we explained that this Court looks to the "discrepancy between the advisory guidelines range and the actual sentence" to determine whether a sentence is reasonable. *Cage*, 451 F.3d at 594. "[T]he farther the trial court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be." *United States v. Valtierra-Rojas*, — F.3d —, 2006 WL 3237187, at *3 (10th Cir. 2006) (alteration omitted). In other words, how compelling the justification must be to render an extra-Guidelines sentence reasonable "is proportional to the extent of the difference between the advisory range and the sentence imposed." *United States v. Bishop*, — F.3d — , 2006 WL 3237027, at *10 (10th Cir. 2006).

In determining how compelling the justification for a particular sentence must be, we consider both the "percentage of divergence" from the advisory range and the "absolute number of months above or below the Guidelines range." *Valtierra-Rojas*, 2006 WL 3237187, at *3. In *Cage*, we held that the district court's six-day sentence was an "extreme" divergence from the Guidelines-recommended sentence of at least 46 months; therefore, the sentence "must be supported by extraordinary circumstances." *Cage*, 451 F.3d at 594. We found the

sentence unsupported by the type of extraordinary circumstances that might legitimatize it because the sentencing court failed to cite any § 3553(a) factors that were peculiar to the defendant. Instead, the court based its divergence only on those factors that were common to many defendants—in that case, the defendant's status as a single mother. *Id.*; *see also United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) (explaining that under substantive reasonableness review "a non-Guidelines sentence that rests primarily upon factors that are not unique or personal to a particular defendant" is "inherently suspect"). From *Cage*, it follows that whether the rationale provided by the sentencing court for a non-Guidelines sentence is sufficiently compelling is determined by considering whether the particular characteristics of the defendant the court relied upon in fashioning the sentence are commonplace—and therefore presumably are already part of the Guidelines calculation—or are sufficiently uncommon to justify a divergence from the presumptively reasonable Guidelines sentence. *See Cage*, 451 F.3d at 595–96 (determining facts relied upon by district court to justify "extreme divergence" were not "particularly out of the ordinary" and therefore could not justify sentence).

Since *Cage*, we have held that the "comparative difference" between a defendant's 78-month sentence and the advisory-range maximum of 57 months (a 37% increase) was a "significant increase" requiring "sufficient explanation and justification," *see Bishop*, 2006 WL 3237027, at *10, and that the difference

-15-

between a 60-month sentence and the advisory-range maximum of 27 months (a 122% increase) was "substantial" and required "compelling reasons" to support the district court's decision, *see Valtierra-Rojas*, 2006 WL 3237187, at *3. Though we required compelling reasons to support the sentence in *Valtierra-Rojas*, we did not require the same kind of "dramatic facts" as we required in *Cage* because, we noted, the sentencing court in *Cage* "effectively ignore[d] the advice of the Guidelines" to essentially impose "no prison sentence at all." *See Valtierra-Rojas*, 2006 WL 3237187, at *3 (alteration in original).

While "[t]he nature of the inquiry announced in *Cage* (the greater the divergence, the more compelling the reasons) is not one that allows for precision in measurement," *Valtierra-Rojas*, 2006 WL 3237187, at *3, it is clear that the District Court's divergence from the advisory range here is of the extreme type akin to that in *Cage* requiring a "compelling" justification supported by "dramatic facts." Here, the District Court increased Mr. Mateo's sentence by 471% above the high end of the advisory range of 21 months—more than eight years longer than he would serve if he was sentenced in accordance with the advisory Guidelines.

The District Court determined that this sentence was warranted because of Mr. Mateo's exceptional history and the fact that the advisory Guidelines sentence did not fully reflect the serious nature of his criminal record. Mr. Mateo's history as presented in the uncontested facts of the PSR discloses

significant contact with the criminal justice systems in three different states over a relatively short period of time. The sentence reflects the District Court's well-justified concern that Mr. Mateo's frequent brushes with the law indicate "a commitment to a criminal lifestyle." The import of this finding and the court's citation to the § 3553(a) factors is plain: Mr. Mateo's sentences for prior convictions have not been effective at deterring him from engaging in criminal behavior and the public requires protection from Mr. Mateo's demonstrated penchant for criminality. *See* § 3553(a)(2)(B), (a)(2)(C); *cf. United States v. Fairclough*, 439 F.3d 76, 80–81 (2d Cir. 2006) (holding 48-month sentence, which was 21 months higher than the maximum advised by Guidelines, was reasonable based on district court's conclusion that defendant "had a relatively uninterrupted string of criminal activity and arrests" and "interaction after interaction with the criminal justice system"). Based on these specific circumstances and the District Court's use of the armed career criminal provision as a guidepost to gauge the length of the sentence, the District Court imposed a reasonable sentence.

### III. CONCLUSION

We conclude that the District Court did not err by looking to the armed career criminal portion of the Guidelines to help determine the appropriate weight to give to the unique lifestyle characteristics of this defendant as disclosed by the uncontested facts available in the PSR. We also conclude that based on those

dramatic facts, the sentence imposed was reasonable.  We AFFIRM the judgment

of the District Court.

No. 05-2266, *United States v. Mateo*
**MURPHY**, Circuit Judge, joined by **KELLY**, Circuit Judge, concurring.

I concur in the majority's well-stated opinion.  I write separately, however, to express serious misgivings with this court's precedents that usurp the district courts' sentencing discretion.

On appeal, Mateo asserts as follows: (1) the sentence imposed by the district court is contrary to the policy considerations set out in the Sentencing Guidelines; and (2) the sentence imposed by the district court is unreasonable in reference to the factors set out in 18 U.S.C. § 3553.  The majority persuasively and correctly rejects both of Mateo's contentions.

A district court is not free to impose a sentence outside the range set out in the advisory Sentencing Guidelines based simply on its disagreement with the policies underlying the Guidelines.  *United States v. McCullough*, 457 F.3d 1150, 1171-72 (10th Cir. 2006) (discussing variances from the advisory Guidelines range based on mere disagreement with the 100:1 crack to powder cocaine ratio set out in the Guidelines).  The Guidelines specifically prohibit upward departures from an advisory Guidelines range based solely on a defendant's arrest record.  U.S.S.G. § 4A1.3(a)(3) ("A prior arrest record itself shall not be considered for purposes of an upward departure under this policy statement.").  Mateo contends the sentence imposed by the district court is contrary to § 4A1.3(a)(3).

In contrast to Mateo's assertion, a close review of the sentencing transcript demonstrates the district court did not simply rely on the existence of Mateo's

arrest record in deciding to impose a sentence outside of the advisory Guideline range. Instead, the district court began the sentencing process by properly calculating Mateo's advisory Guidelines range. The district court then balanced that range and the policy statements underlying the Guidelines, 18 U.S.C. § 3553(a)(4), (5), with Mateo's background and characteristics, the circumstances of the offense, and the need to provide adequate deterrence and protect the public from further crimes, *id.* § 3553(a)(1), (2). As part of the district court's balancing of the § 3553(a) factors, the district court concluded Mateo's character and background—specifically including his extensive, consistent, and serious involvement in criminal activity, as evidenced by his prior convictions, prior arrests, and the circumstances surrounding the prior arrests— "demonstrate[d] a pattern of and commitment to a criminal lifestyle . . . that is consistent with criminal activity and patterns one typically sees for armed career criminals." Thus, under the very unique circumstances of this case, the factors set out in § 3553(a)(1) and (2) justified a sentence significantly higher than set out in the advisory Guidelines range. The sentence imposed by the district court is not a rejection of the policy statements in § 4A1.3(a)(3), but a careful balancing of the factors set out in § 3553(a).

I also agree with the majority that the sentence imposed by the district court is reasonable and that such a conclusion is faithful to this court's precedents regarding appellate review of sentences for reasonableness. *See* Majority Op. at

-2-

13-14 (collecting and analyzing cases). What I question is this court's developing insistence that district courts take extraordinary steps to justify sentences outside the range set out in the advisory Sentencing Guidelines. *United States v. Cage*, 451 F.3d 585, 593-95 (10th Cir. 2006) (holding that sentencing factors set out in § 3553(a) relating to the advisory Guidelines range are more important than other statutory factors and that the further a sentence deviates from the advisory Guidelines range the greater the justification a district court must provide); *see also United States v. Shaw*, No. 05-6074, 2006 WL 3505339, at *4 (10th Cir. Dec. 6, 2006) (applying *Cage* and affirming sentence 48% above advisory Guidelines range because the district court had identified a "substantial justification" for the divergence); *United States v. Valtierra-Rojas*, No. 05-3390, 2006 WL 3237187, at *3 (10th Cir. Nov. 9, 2006) (holding that in light of *Cage*, court was obligated to closely examine sentence 122% above high end of the advisory sentencing range); *United States v. Bishop*, No. 05-3173, 2006 WL 3237027, at *10 (10th Cir. Nov. 9, 2006) (holding that in light of *Cage*, a 37% deviation from the advisory Guidelines range "is a significant increase that requires sufficient explanation and justification").

It is absolutely clear following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 259-60 (2005), that when imposing a sentence the district courts must consider the factors set out in § 3553(a). As noted by the Court in *Booker*, the range set out in the advisory Sentencing Guidelines and the

policy statements of the Sentencing Commission are among those factors. *Id.* Nothing in either *Booker* or the plain text of § 3553(a) indicates that the sentencing factors relating to the Sentencing Guidelines have primacy over the sentencing factors not relating directly to the Guidelines. Under this circuit's precedents, however, some of the statutory sentencing factors are apparently more equal than others. *Cage*, 451 F.3d at 593-94 That is, the greater the deviation from the range set out in the advisory Sentencing Guidelines, the greater the burden on the district court to justify the sentence. *Id.* at 594. The rule set out in *Cage* has led to the utterly bizarre circumstance where this court tries to quantify, in something that looks just like *de novo* review, just how extreme the circumstances must be to justify a 471% (or 122%, 48%, 37%) deviation from the advisory Guideline range. *But see Booker*, 543 U.S.. at 259 (specifically noting that provision of 18 U.S.C. § 3742(e) requiring *de novo* review of departures from the applicable Guideline range must be severed to render the Sentencing Reform Act constitutional).

This case is a perfect example of the irrationality of appellate review of sentences in this circuit. The federal district courts impose sentences on numerous defendants and have a clear institutional advantage when it comes to discerning which defendants are in need of harsh punishment and which are in need of leniency. In this case, the district court brought that institutional advantage to bear, concluding that Mateo was an exceptionally dangerous

individual in need of an exceptionally severe sentence. In so doing, the district court weighed Mateo's personal characteristics, the circumstances of his crime, the need to protect the public, and the need for deterrence with the policy statements of the Sentencing Commission and the advisory range set out in the Guidelines. On appeal, pursuant to the system required by *Cage*, this court is required to undertake that same analysis, but without the institutional advantage native to the district court, all in what would appear to be an attempt to force the district courts to hew as close to the Guidelines range as possible. It is odd, indeed, to see how quickly the appellate standard of reasonableness set out in *Booker* has morphed into a mathematical exercise pegged exclusively to those sentencing factors in § 3553(a) relating to the advisory Guidelines. *But see Booker*, 543 U.S. at 261 ("Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.")

Although many might bemoan the decision in *Booker*, it is the law of the land. The Guidelines are no longer mandatory and it is improper for this court to impose a system of appellate review that seeks to return this circuit, *de facto*, to a mandatory system. As recently noted by the Seventh Circuit,

> [T]he standard of reasonableness, introduced by the *Booker* decision, confers broad sentencing discretion. The judge must consider the guidelines but is in no sense bound by them. He is bound only by the statutory sentencing factors, 18 U.S.C. § 3553(a), which are both numerous and vague, thus giving the judge a great deal of running room.

*United States v. Bullion*, 466 F.3d 574, 575 (7th Cir. 2006).  The district court here recognized that it was required to consider the factors in § 3553(a) in arriving at a sentence, and it did in fact consider those factors.  Were I the sentencing judge, I might not have imposed the same sentence as did the district court.  The balance struck by the district court, however, is certainly not unreasonable.  For that reason alone, I would affirm the district court.  *Id.* at 577 (holding that arguments like those at issue in this case, i.e., the district court struck the wrong balance of mitigating and aggravating circumstances in arriving at a sentence, "are arguments to address to a sentencing judge, not to an appellate court.  No precise weights can be assigned to such factors in the sentencing balance . . . .  The striking of a balance of uncertainties can rarely be deemed unreasonable . . . .").  Nevertheless, because *Cage* requires the analysis undertaken in the majority opinion, I respectfully concur.