FILED
United States Court of Appeals
Tenth Circuit

**June 17, 2008**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DAVID C. WITTIG,

      Defendant - Appellant.

No. 07-3051

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 02-CR-40140-JAR)**

---

Richard L. Hathaway, Assistant United States Attorney (Eric F. Melgren, United States Attorney, and Christine E. Kenney, Assistant United States Attorney, with him on the brief), Kansas City, Kansas, for Plaintiff - Appellee.

Lisa R. Eskow of Weil, Gotshal & Manges (Steven Alan Reiss, J. Nicholas Bunch, and Carol A. Funk, with her on the briefs), Austin, Texas, for Defendant - Appellant.

---

Before **HARTZ, O'BRIEN** and **HOLMES**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

      David C. Wittig appeals – for the third time – from his sentence for conspiracy, bank fraud and money laundering. We vacated his first two sentences

(51 months imprisonment and 60 months imprisonment). *United States v. Weidner*, 437 F.3d 1023 (10th Cir. 2006) (*Wittig I*); *United States v. Wittig*, 206 Fed. Appx. 763 (10th Cir. 2006) (unpublished) (*Wittig II*). The district court has now sentenced Wittig to 24 months imprisonment, followed by a three-year term of supervised release with special conditions, including an occupational restriction. *United States v. Wittig*, 474 F. Supp. 2d 1215 (D. Kan. 2007) (*Wittig III*). Wittig appeals from the prison sentence and the occupational restriction. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(a), we affirm the sentence but reverse the occupational restriction.

## I. BACKGROUND

We will not repeat all of the facts underlying Wittig's appeal, as they are set forth in detail in our two previous decisions. *See Wittig I*, 437 F.3d at 1027-32; *Wittig II*, 206 Fed. Appx. at 764-68. For present purposes, it is sufficient to state Wittig loaned $1.5 million to Clinton Odell Weidner II, the former president, chief executive officer, and general counsel of Capital City Bank in Topeka, Kansas. At the time he made the loan, Wittig was a customer of the bank and was chairman of the board, president and chief executive officer of Western Resources, Inc. (now Westar Energy, Inc.), the largest electric utility in Kansas. Both Wittig and Weidner intended to profit from the loan (in different ways) and

-2-

both concealed the loan from the bank through false documentation.[1]

Wittig and Weidner were convicted of one count of conspiracy to submit false entries to a federally insured bank and to launder money in violation of 18 U.S.C. § 371; four counts of making a false bank entry in violation of 18 U.S.C. § 1005; and one count of money laundering in violation of 18 U.S.C. § 1957. Wittig was sentenced to 51 months imprisonment.[2] In arriving at this sentence, the court looked to the 2002 version of the United States Sentencing Guidelines, which were mandatory at the time. It determined Wittig's base offense level was 6. *See* USSG §2B1.1(a). It then applied two enhancements – the intended loss enhancement, USSG §2B1.1(b)(1), and the gross receipts enhancement, USSG §2B1.1(b)(12)(A)[3] – bringing Wittig's total offense level to 24. With a Criminal History Category of I, Wittig's guideline range was 51 to 63 months imprisonment.

In *Wittig I*, we affirmed Wittig's conviction but vacated his sentence and remanded for resentencing. 437 F.3d at 1027. We concluded the court erred in

---

[1] Wittig made over $90,000 on the loan, based on the difference between the interest charged to Wittig by the bank and the interest Wittig charged to Weidner. Wittig also obtained an increase in his line of credit.

[2] Weidner was originally sentenced to 78 months imprisonment. We vacated that sentence. *Wittig I*, 437 F.3d at 1049-50. On remand, Weidner was sentenced to 60 months imprisonment. We affirmed. *United States v. Weidner*, 209 Fed. Appx. 826, 827 (10th Cir. 2006) (unpublished).

[3] This provision was renumbered as USSG §2B1.1(b)(13)(A) in the 2005 version of the guidelines.

applying the gross receipts enhancement because the gross receipts from the offense had been properly attributed to Weidner and could not also be attributed to Wittig. *Id.* at 1046-47. We also determined the court erred in applying the intended loss enhancement because it did not adequately consider the collateral pledged by Wittig and did not find Wittig intended to deprive the bank of this collateral. *Id.* at 1048. On the basis of these errors, we remanded for resentencing. We noted the guidelines were no longer mandatory and instructed resentencing be conducted consistent with *United States v. Booker*, 543 U.S. 220 (2005). *Id.*

On remand, the court again used the intended loss and gross receipts enhancements to calculate Wittig's offense level. In justifying its use of the intended loss enhancement, the court acknowledged some credit should be given to the collateral pledged by Wittig, but discounted the value of the collateral, finding it was not "secured in a very secure fashion." *Wittig II*, 206 Fed. Appx. at 767 (quotations omitted). The court considered evidence from a related case involving Wittig and determined the bank fraud at issue here "was part of a larger scheme in which [Wittig] intended to cause loss to Westar Energy of more than $1 billion." *Id.* at 767-68 (quotations omitted).[4] The court determined Wittig's

---

[4] In a separate case, Wittig was prosecuted for thirty-nine counts of wire fraud, money laundering, conspiracy and circumvention of internal financial controls in relation to his position as president, chief executive officer and chairman of the board of Westar Energy, Inc. His first trial ended in a hung jury. He was convicted on all counts in his second trial but we reversed. *See United*

total offense level was 24, resulting in a guideline range of 51 to 63 months imprisonment. The court imposed a sentence of 60 months. The court determined the sentence was reasonable under the 18 U.S.C. § 3553(a) factors[5]

*States v. Lake*, 472 F.3d 1247, 1250, 1253-54 (10th Cir. 2007).

[5] Section 3553(a) provides in pertinent part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in . . . this subsection. The court, in determining the particular sentence to be imposed, shall consider–

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> **(3)** the kinds of sentences available;
> **(4)** the kinds of sentence and the sentencing range established for--
> > **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> **(5)** any pertinent policy statement . . . ;
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> **(7)** the need to provide restitution to any victims of the offense.

and would be appropriate even if the intended loss and gross receipts enhancements did not apply.

In *Wittig II*, we held: "[T]he district court again erred in computing Mr. Wittig's offense level under the Guidelines. The base offense level for Mr. Wittig's crime was 6. The only potential grounds for increasing it would be the gross receipts enhancement or the intended loss enhancement. Neither ground applies." 206 Fed. Appx. at 769 (citations omitted). We determined the court had disregarded *Wittig I* and impermissibly reapplied the gross receipts enhancement. *Id*. We also held the court erred in applying the intended loss enhancement because "we have been pointed to no evidence that Mr. Wittig intended the Bank to lose any money on its loan to him." *Id.* at 769-70. We rejected the government's argument that the sentence should be affirmed notwithstanding the district court's miscalculation of the offense level. *Id.* at 770. We stated: "[A]lthough the court gave reasons why it believed the imposed sentence was reasonable, it failed to explain what dramatic facts justified such an extreme divergence from the best estimate of Congress's conception of reasonableness expressed in the Guidelines." *Id.* (quotations omitted). We stated that to justify a non-guidelines sentence, "[t]he court would need to explain what the Guidelines failed to take into account and why that omitted factor is of such enormous consequence." *Id.*

The court has now sentenced Wittig to 24 months imprisonment. In

arriving at this sentence, the court recognized "*Wittig II* clearly ruled that the applicable Guidelines range in this case is 0-6 months . . . ." 474 F. Supp. 2d at 1226. However, the court determined the guidelines failed to take into account the "dramatic facts" of the case and thus imposed a sentence 18 months greater than the upper end of the guidelines range, a 300% variance.[6] *Id.* at 1233. The court explained "a term of imprisonment of 24 months is sufficient, but not greater than necessary to comply with the purposes set forth in [§ 3553(a)]." *Id.* at 1234. The court also imposed a three-year term of supervised release with four special conditions, including an occupational restriction: "The defendant shall not be employed in any capacity in which he will have executive authority over any business, company or agency, and shall not engage in any financial agreements or negotiations involving any business, company or agency without the prior approval of the Court." (R. Vol. II at 270.) On appeal, Wittig challenges the reasonableness of the sentence and the imposition of the occupational restriction as a special condition of supervised release.[7]

## II. DISCUSSION

[6] "When a court enhances or detracts from the recommended [guideline] range through application of § 3553(a) factors . . . the increase or decrease is called a 'variance.'" *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007).

[7] Wittig was released from custody on February 12, 2007, pending our resolution of this appeal. At the time of his release, he had served over 12 months in prison.

A.    The Sentence

Since *Booker*, this Court has reviewed sentences for reasonableness, guided by the factors set forth in 18 U.S.C. § 3553(a). *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). Reasonableness has both a procedural component, encompassing the method by which the sentence is calculated, and a substantive component, which relates to the length of the sentence. *Id.* at 1055. In *United States v. Smart*, we noted it would be procedural error if a court failed to consider the § 3553(a) factors or considered factors outside the scope of § 3553(a). 518 F.3d 800, 803-04 (10th Cir. 2008). A challenge to the sufficiency of the § 3553(a) justifications, on the other hand, raises a substantive challenge. *Id.* at 804. Wittig appears to be raising both a procedural and substantive challenge to his sentence. He contends the district court considered factors that were improper under § 3553(a)(1), (a)(2)(A) and (a)(6) (procedural error) and arrived at an unreasonable sentence in weighing the § 3553(a) factors (substantive error). Our review is for an abuse of discretion. *See Gall v. United States*, -- U.S. --, 128 S. Ct. 586, 591 (2007); *Rita v. United States*, -- U.S. --, 127 S. Ct. 2456, 2465 (2007) ("appellate 'reasonableness' review merely asks whether the trial court abused its discretion").

1.    Procedural Error

In arriving at a sentence, a district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant"

-8-

and "the need for the sentence imposed -- [  ] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(1), (a)(2)(A).  The district court determined the advisory guideline range (0 to 6 months) did not adequately account for these factors because Wittig was involved in a fraudulent scheme involving a financial institution; he intended to profit (and did profit) from the fraud; and the fraud involved $1.5 million in gross receipts.  *See Wittig III*, 474 F. Supp. 2d at 1234-35.  Having concluded the guidelines did not adequately account for the specific circumstances of the case, the court looked to the intended loss and gross receipts enhancements as guideposts for determining a proper sentence.  *See id.* at 1234, 1238.  As acknowledged by the court, *Wittig I* and *II* specifically foreclosed application of these enhancements.  They did not, however, foreclose consideration of these enhancements.  While this may seem a fine point, we have previously held it is not improper for a sentencing court to look to the guidelines in search of a sentencing guidepost.  *See, e.g., United States v. Mateo*, 471 F.3d 1162, 1168-69 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2890 (2007); *United States v. Wolfe*, 435 F.3d 1289, 1304 n.12 (10th Cir. 2006).  We discern no procedural error in the court's use of the intended loss and gross receipts enhancements as guideposts.[8]

_____

[8] It is clear the court did not actually *apply* these enhancements.  Had the court applied only the intended loss enhancement, the guideline range would have been 41 to 51 months imprisonment.  *See* 474 F. Supp. 2d at 1235.  Had the court

A sentencing court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). While the district court acknowledged the dissimilarities between Wittig and Weidner, it noted they were convicted of the same crimes and had the same criminal histories. *Wittig III*, 474 F. Supp. 2d at 1236-37. The court determined it was not improper for them to have disparate sentences, but felt it necessary to reduce the disparity, and concluded a 60 month sentence for Weidner and a 24 month sentence for Wittig adequately accounted for their differences. *Id.* at 1237. Our case law instructs: "Ordinarily, the disparity between co-defendants' sentences is not grounds for relief." *United States v. Shaw*, 471 F.3d 1136, 1140 (10th Cir. 2006). However, as we noted in *Smart*, "codefendant disparity is not a per se 'improper' factor" post-*Gall*. 518 F.3d at 804. District courts "may compare defendants when deciding a sentence." *Id.* Thus, the court did not commit procedural error in considering the disparity between Wittig and Weidner's sentences.

2.      Substantive Error

Wittig contends the sentence imposed is substantively unreasonable and not supported by the § 3553(a) factors. The court stated the sentence was appropriate because of the "dramatic" facts. *Wittig III*, 474 F. Supp. 2d at 1233. While we

---

applied only the gross receipts enhancement, the guideline range would have been 51 to 63 months. *Id.*

question whether the facts are indeed "dramatic," that is no longer the starting point for our review. We may "take the degree of variance into account and consider the extent of a deviation from the Guidelines," *Gall*, 128 S. Ct. at 595, but our analysis does not change based on the degree of the variance.[9] *Smart* instructs:

> [W]e must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance . . . . It is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable, and we must therefore defer not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings.

518 F.3d at 808 (quotations and citation omitted). This standard of review does not change "even if the facts of the case are less than extraordinary." *Id.*

Though a 24 month sentence was certainly not the only reasonable sentence the district court could have arrived at, we discern no abuse of discretion. The court determined the variance "is necessary to afford adequate deterrence to bank customers who are aiders and abettors to nominee loans with bank officers . . . ."

---

[9] Prior to *Gall*, we reviewed sentences outside the calculated guideline range on a sliding scale, requiring a more compelling justification the farther the sentence diverged from that range. *See, e.g., Mateo*, 471 F.3d at 1169 ("[H]ow compelling the justification must be to render an extra-Guidelines sentence reasonable is proportional to the extent of the difference between the advisory range and the sentence imposed.") (quotations omitted). In *Gall*, the Supreme Court "reject[ed] the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." 128 S. Ct. at 595. The Court held such an approach "come[s] too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range." *Id.*

*Wittig III* , 474 F. Supp. 2d at 1237. We cannot disagree. As we stated in *United States v. McComb*, while "we recognize that in many cases there will be a range of possible outcomes the facts and law at issue can fairly support; rather than pick and choose among them ourselves, we will defer to the district court's judgment so long as it falls within the realm of these rationally available choices." 519 F.3d 1049, 1053 (10th Cir. 2007), *cert. denied*, — S. Ct. —, 2008 WL 717725 (2008).

B.    The Occupational Restriction

Over Wittig's objection, the district court imposed an occupational restriction as a special condition of supervised release. The restriction prohibits Wittig from being employed as an executive and engaging in any financial agreements or negotiations in a professional capacity without first obtaining court approval. "The district court generally enjoys broad discretion in setting a condition of supervised release." *United States v. Erwin*, 299 F.3d 1230, 1232 (10th Cir. 2002). Accordingly, we review special conditions of supervised release for abuse of discretion. *United States v. Edgin*, 92 F.3d 1044, 1047 (10th Cir. 1996).

Wittig contends the court abused its discretion in imposing this "sweeping employment restriction." (Appellant's Opening Br. at 35.) Wittig claims this condition renders him virtually unemployable as an executive because of the judicial oversight it entails. He asserts the restriction bears no reasonable relation

-12-

to the conduct for which he was convicted and is not narrowly tailored to achieve its objective. The government contends the restriction is reasonable because it does not absolutely prohibit Wittig from engaging in financial agreements or negotiations but merely requires he obtain court approval before doing so. The government asserts the restriction is reasonably related to the conduct for which Wittig was convicted because, *inter alia*, Wittig "was involved in this transaction and carried out aspects of the conspiracy while the chief executive of a utility." (Appellee's Br. at 22.)

The district court has discretion to impose an occupational restriction as a special condition of supervised release, but its discretion must be exercised in accordance with 18 U.S.C. §§ 3583(d) and 3563(b) and USSG §5F1.5. Section 3583(d) provides in pertinent part:

> The court may order, as a further condition of supervised release, to the extent that such condition --
> **(1)** is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
> **(2)** involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
> **(3)** is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);
> any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20) . . . .

Section 3563(b)(5) sets forth occupational restrictions as a discretionary condition of probation. This section states:

The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant . . . refrain . . . from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances.

USSG §5F1.5 implements § 3583(d). Subsection (a) states that a sentencing court may impose an occupational restriction "only if it determines":

**(1)** a reasonably direct relationship existed between the defendant's occupation, business or profession and the conduct relevant to the offense of conviction; and

**(2)** imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

Moreover, an occupational restriction "shall [be] impose[d] . . . for the minimum time and to the minimum extent necessary to protect the public." USSG §5F1.5(b).

In rejecting Wittig's objection to the occupational restriction, the court tersely explained:

[The] conditions of supervision are directly connected to the underlying offenses for which defendant Wittig was convicted. Defendant Wittig was convicted of fraud and conspiracy to commit fraud that involved financial transactions. Specifically, he was found guilty in a scheme that involved false and misleading statements made on financial documents. If defendant Wittig were to have executive authority, or conduct financial transactions on behalf of a

-14-

business entity, he would be responsible for a multitude of financial documents. As a result, the conditions are reasonably related to the nature and circumstances of the offense and the history and characteristics of this defendant.

474 F. Supp. 2d at 1225. The court stated: "[T]hese conditions do not involve a greater deprivation of liberty or property than is necessary. Defendant Wittig is not prohibited entirely from engaging in the activities . . . ; he simply must obtain permission from this Court before doing so." *Id.* These conclusory statements do not satisfy the requirements of the statutory and guideline provisions discussed above.

First, in order for an occupational restriction to be warranted, there must be a "reasonably direct relationship . . . between the defendant's . . . profession and the conduct relevant to the offense of conviction." USSG §5F1.5(a)(1); *see also* 18 U.S.C. 3563(b)(5) (requiring that the occupational restriction "bear[ ] a reasonably direct relationship to the conduct constituting the offense"). Where, as here, the restriction relates to a management position, the "disqualification must bear a reasonable relationship to an abuse of the management position for a criminal purpose." S. REP. NO. 98-225, at 96 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3279. The court did not explain how the restriction was connected to Wittig's abuse of a management position for a criminal purpose. The offense of conviction was based on Wittig's personal conduct, not his conduct as an executive. Wittig used his personal line of credit to effect a

-15-

nominee loan to a bank employee and failed to disclose the loan to the bank. The mere fact Wittig engaged in such conduct while employed as an executive does not establish the necessary connection between the conduct and his management/executive positions.

Second, an occupational restriction must be "reasonably necessary to protect the public," which requires a finding that, in the absence of the restriction, "the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." USSG §5F1.5(a)(2); *see Erwin*, 299 F.3d at 1232 ("[T]he district court is required to determine that without the prohibition [the defendant] will continue to engage in criminal conduct similar to that for which he was convicted . . . ."). Here, the court did not find Wittig would continue to engage in unlawful conduct absent the restriction. It noted only that if Wittig were to have executive authority, he would be responsible for a multitude of financial transactions. This is not sufficient.

Third, an occupational restriction "shall [be] impose[d] . . . for the minimum time and to the minimum extent necessary to protect the public." USSG §5F1.5(b); *see also United States v. Souser*, 405 F.3d 1162, 1167 (10th Cir. 2005) (noting the "use of the word 'shall' [ in §5F1.5(b)] makes clear the mandatory nature of the court's finding that the occupational restriction is the minimum restriction necessary"). The restriction must entail no greater deprivation of liberty than is necessary. *See* 18 U.S.C. §§ 3583(d), 3563(b)(5).

-16-

Here, there is no indication the court considered any less restrictive alternatives. This constitutes reversible error. *See Souser*, 405 F.3d at 1167 (concluding the district court's error was not harmless because "nothing in the record establishes that the court considered whether the public could be equally protected by lesser restrictions").

On these facts, an occupational restriction cannot satisfy the requirements of 18 U.S.C. §§ 3583(d) and 3563(b) and USSG §5F1.5. We **REVERSE** the fourth special condition of supervised release and remand with instructions to eliminate that condition. In all other respects, we **AFFIRM.**

07-3051- *United States v. Wittig*

**HARTZ**, Circuit Judge, joined by O'BRIEN and HOLMES, Circuit Judges, concurring:

I join fully in Judge O'Brien's opinion. I write separately only to express my disagreement with this court's recent jurisprudence regarding substantive reasonableness of sentences.

This court's present approach appears to be that a sentence is substantively reasonable if the sentencing judge provides reasons for the length of the sentence. *See United States v. Muñoz-Nava*, 524 F.3d 1137, 1142–43 (10th Cir. 2008). To be sure, some reasons would be out-of-bounds, such as the defendant's race or name. But district judges are reasonable people, and I would be surprised if we ever see an irrational sentence. We will, however, see great inequality in sentencing. Reasonable people differ on how lenient or harsh sentences should be, both in general and for particular crimes and particular types of offenders. The resulting inequalities will have our imprimatur. Under this court's present approach we may go through the motions of substantive-reasonableness review, but it will be an empty gesture.

I think that a different approach is appropriate. Sentencing judges are required to consider the factors set forth in 18 U.S.C. § 3553(a). Some of those factors do not seriously constrain the judge's discretion. Every judge will unavoidably consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *id*. § 3553(a)(1); yet we all know that

reasonable people can reach strikingly different conclusions regarding what sentence is proper in light of those considerations. Two of the factors, however, have real teeth, and should be a matter of concern to appellate courts that wish to effectuate congressional intent that we be a nation of equal justice under law, in which the length of time that a defendant is deprived of liberty does not depend primarily and significantly on who the sentencing judge happens to be. These two factors are the sentencing range in the Sentencing Guidelines, *id.* § 3553(a)(4), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6).

In my view, a sentence is substantively unreasonable if the only reason that the length is outside the range of what judges ordinarily impose for "defendants with similar records who have been found guilty of similar conduct" is that the sentencing judge has an idiosyncratic view of the seriousness of the offense, the significance of the defendant's criminal history and personal qualities, or the role of incarceration in the criminal-justice system. Determining whether a particular judge has idiosyncratic views could be problematic, except that the United States Sentencing Commission has, in large part, developed its Sentencing Guidelines by studying the sentences being handed down by district judges throughout the country. *See Kimbrough v. United States*, 128 S. Ct. 558, 574–75 (2007). Thus, the consideration of the Guidelines Sentencing range required by § 3533(a)(4)

ordinarily provides the sentencing judge with knowledge of sentencing practice within the federal judiciary. A significant variance from that practice should be considered unreasonable if it can be justified only by disagreement with the general views of other judges.