**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESSE SHAW,

Defendant-Appellant.

No. 05-6074

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-04-039-HE)**

---

David P. Henry, Oklahoma City, Oklahoma, on briefs for Defendant-Appellant.

Timothy W. Ogilvie, Assistant United States Attorney, Office of the Untied States Attorney, Oklahoma City, Oklahoma, on brief for Plaintiff-Appellee.

---

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.[*]

---

**TYMKOVICH**, Circuit Judge.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Jesse Shaw was sentenced for bank robbery above the range set forth in the United States Sentencing Guidelines because the district court believed the Guidelines failed to account for his criminal history and role in assaulting a bank employee. The question on appeal is whether this nonguideline sentence is "reasonable" under 18 U.S.C. § 3553(a). For the reasons discussed below, we conclude it is reasonable and affirm.

## I. Background

On February 3, 2004, Jesse Shaw and RaVon Patterson robbed the MidFirst Bank in Norman, Oklahoma. Patterson jumped over the counter, pushing two tellers and knocking one of them to the floor. Shaw went into bank manager Charles Sweet's office and punched him in the face, knocking out a front tooth and loosening five or six more. They left with $568 and were quickly apprehended.

Patterson was the first to plead guilty. The court denied his request to continue sentencing until after the Supreme Court issued an opinion in *United States v. Booker*, 543 U.S. 220 (2005), and he was sentenced on October 15, 2004, to 105 months in prison. The basis for this sentence was the district court's mandatory application of the Guidelines and its conclusion that Shaw had

inflicted "serious bodily injury," *see* USSG § 2B3.1(b)(3)(B), when he punched Sweet in the face.[1]

Shaw subsequently pled guilty and was sentenced on February 28, 2005, by which time the Supreme Court had issued its landmark *Booker* decision. In light of *Booker*, the district court stated it would "give heavy weight to the guidelines because they are, of course, the only systematic analysis that is really made of all the factors that might apply in a particular case." Vol. III, 6. A presentence report (PSR) recommended that the court find an offense level of 23 and a criminal history category of III, yielding a guideline range of 57 to 71 months. Shaw did not object to this calculation.

At sentencing, Shaw argued that a 71-month sentence would have no greater effect than a 57-month sentence and that he hoped some rehabilitation might happen in the prison where he would be sent. The government responded by citing the high-end sentence imposed on Patterson and recommended that the court similarly sentence Shaw at the high end of the guideline range. The court also heard briefly from Sweet,[2] who described how Shaw slugged him in the face,

---

[1] In a contemporaneous order resolving Patterson's appeal, we conclude that Patterson waived his Sixth Amendment challenge to his sentence and that any *Booker* error was harmless. *United States v. Patterson*, 180 F.App'x 805 (10th Cir. 2006).

[2] Sweet had previously testified in greater detail at Patterson's sentencing hearing, and the record reflects the judge considered that testimony.

knocking out a front tooth, damaging his bottom teeth, and knocking him to the floor without provocation.

After hearing from Sweet, the court imposed a 105-month sentence. The court first stated its understanding of how the Guidelines factored into the analysis:

> [A]s I mentioned earlier, the sentencing guidelines are now essentially advisory rather than mandatory, but it has been my view that the sentencing guideline should ordinarily be followed unless there is some significant reason to do something differently. I've indicated that I will give heavy weight to the guidelines because they are, of course, the only systematic analysis that's really made of all the factors that might apply in a particular case. And I think in most instances they result in an appropriate sentence. However, the Court does, of course, have the authority now to sentence outside the guideline range if there's a compelling reason to do so.

Vol. III, 6–7.

The court continued to say that it found "a compelling reason to sentence outside the guideline range." Recognizing that Patterson's sentence had been enhanced based on the blow Shaw gave to Sweet, the court stated that this fact "raises a significant question as to fairness if this defendant is sentenced at a lesser amount than was his codefendant, who . . . wasn't actually the hands-on perpetrator of the violence that was involved here." Vol. III, 7.

Furthermore, the court observed, the difference in the guideline range was precipitated by differences in the guideline calculation of their criminal history

category, but that technical computation did not adequately capture the seriousness of Shaw's record:

> The differences in the guideline ranges between these two defendants was principally due, or I think exclusively due, to the difference in the criminal history calculation that applies to them. And in particular, the difference was that . . . [Mr. Patterson] got additional criminal history points to reflect the fact that certain offenses . . . he had committed occurred while he was on parole or within two years of his release from incarceration.

> Mr. Shaw here did not technically meet those same standards, but as I examine the underlying facts, there is virtually no significant difference at all in terms of the background of the criminal history. In particular, I recall here with respect to Mr. Shaw that he committed this offense approximately ten days after he left formal supervision as a part of the supervised release process from his prior offense.

> So there are some fairly significant differences here in terms of the criminal history points and the criminal history category that are based on some—virtually no differences in terms of the underlying conduct and underlying circumstances.

Vol. III, 8.

The court further noted its concern that Shaw's record "seems to reflect a prompt reentry into criminal activity after release from [his] prior incarceration or supervision, that appears to occur fairly quickly fairly consistently, and as was the case here involving violence as well." Vol. III, 8–9. Recognizing "the objectives of sentencing relating to protection of the public and achieving an appropriate deterrent effect with respect to this defendant," Vol. III, 9, the court imposed a 105-month sentence, identical to Patterson's. *See* 18 U.S.C. § 3553(a)(2)(B), (C). Consistent with 18 U.S.C. § 3553(c), the court reduced its rationale to writing:

"Although [Patterson's] criminal history category was higher due to certain offenses being committed while on probation or within two years of release from incarceration, there was little or no significant difference in the underlying history of criminal conduct." Vol. I, Doc. 106, 1.

Shaw filed a timely notice of appeal, and we have jurisdiction pursuant to 18 U.S.C. § 3231 and 28 U.S.C. § 1291.

## II. Analysis

On appeal, Shaw argues only that his sentence was unreasonable because the district court increased the sentence 34 months above the applicable guideline range to reach a sentence comparable to Patterson's. In light of the factors stated in § 3553(a), the evidence established at sentencing, and the reasons stated by the district court, we disagree.

### A. Reasonableness Review

Our appellate review after *Booker* is for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). We have described this standard of review as "a two-step approach." *Id.* at 1055. "First, we must determine whether the district court considered the applicable Guidelines range, reviewing its legal conclusions de novo and its factual findings for clear error." *Id.* Second, we will consider whether the actual sentence imposed "is unreasonable in light of the other sentencing factors laid out in § 3553(a)," including the calculated guideline range. *Id.*

Here, Shaw does not challenge the district court's calculation of the guideline range, so we move directly to the second step. Although a guideline sentence would have been entitled to a rebuttable presumption of reasonableness, *id.* at 1054, the decision here involved a nonguideline sentence, so it was not entitled to such a presumption. In *United States v. Cage*, 451 F.3d 585 (10th Cir. 2006), we considered how much deference to give sentences outside the applicable guideline range: "we should only treat the actual sentence as being a reasonable application of § 3553(a) factors if the facts of the case are dramatic enough to justify such a divergence from the . . . guideline range." *Id.* at 594–95. Although *Cage* dealt with a below-guideline sentence, we noted, "The same rules of appellate review must apply to district court sentencing decisions that are above an advisory guidelines range as to those below an advisory guidelines range." *Id.* at 595 n.5.

Since *Booker*, we have stated that "'because we must review all sentences for reasonableness in light of the factors specified in § 3553(a), we necessarily must scrutinize, as part of that review, the district court's refusal to depart from the advisory sentencing range.'" *United States v. Chavez-Diaz*, 444 F.3d 1223, 1229 (10th Cir. 2006) (quoting *United States v. Vaughn*, 433 F.3d 917, 923–24 (7th Cir. 2006)). We must similarly scrutinize a district court's decision to depart from the advisory range. We review the decision to impose a nonguideline sentence as well as the length of the sentence by examining the sentencing factors

set forth in 18 U.S.C. § 3553(a). *Cage*, 451 F.3d at 594–95. With these principles as background, we turn to Shaw's sentence.

## *B. Shaw's Sentence*

As noted above, Shaw does not challenge the guideline calculation, arguing only that a 34-month increase in his sentence above the applicable guideline range is unreasonable. While conceding that perhaps "an additional 6 months or so" might be reasonable, Aplt. Br. at 10, Shaw challenges the district court's decision to sentence at the same level as his codefendant, who had a different criminal history and was therefore eligible for a higher guideline range.

Under § 3553(a) a district court must consider whether the sentence will create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). "While similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Goddard*, 929 F.2d 546, 550 (10th Cir. 1991) (citation omitted). Ordinarily, the disparity between co-defendants' sentences is not grounds for relief. *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006). But where the court concludes that the Guidelines inadequately reflect a defendant's criminal history or the seriousness of the offense, a deviation may be appropriate. According to Shaw, by applying the guideline range for his criminal

history, he would be eligible for a sentence of only 57 to 71 months, and not the higher range, 84 to 105 months, for which his codefendant was eligible.

Consistent with Shaw's claim, the district court recognized that the guideline calculation of Shaw's and Patterson's respective criminal history categories suggested they had different records. However, while the Guidelines suggested dissimilar records, the court concluded that, as a matter of fact, their records were quite similar and that the Guidelines had not adequately accounted for that similarity. The court noted the difference in the guideline calculation was based on the fact that Patterson had committed the bank robbery "while he was on parole or within two years of his release from incarceration," Vol III, 8, whereas Shaw missed this benchmark by only ten days. The court concluded, "there is virtually no significant difference at all in terms of the background of the criminal history." *Id*. Given this substantial similarity, the court concluded that the advisory guideline range did not properly account for all of the § 3553(a) factors relevant to his sentencing decision.[3] Despite this substantial similarity, Shaw nonetheless argues that the district court should have imposed a lower sentence. We disagree.

---

[3] Prior to *United States v. Booker*, 543 U.S. 220 (2005), a district court would have responded to this underrepresentation by applying USSG § 4A1.3 (authorizing departures from the calculated range based on an inadequate criminal history category). Shaw has not argued on appeal that the district court erred by failing to apply the standards in § 4A1.3, so it is not clear how that section would have affected Shaw's sentence.

The district court concluded that Shaw's conduct reflected "a prompt reentry into criminal activity after release from [his] prior incarceration or supervision, that appears to occur fairly quickly fairly consistently." *Id.* This observation implicated "objectives of sentencing relating to protection of the public and achieving an appropriate deterrent effect with respect to this defendant," *id.*, 9, as additional rationales for a nonguideline sentence. *See* § 3553(a)(2)(B), (C).

Secondly, the district court concluded that Shaw's conduct was more serious than his codefendant's because Shaw was the one who actually assaulted the bank manager. *See* § 3553(a)(1) ("the nature and circumstances of the offense"). The Guidelines do not explicitly distinguish between principals and accessories for purposes of the "serious bodily injury" enhancement at issue here. USSG § 1B1.3(a)(1)(A). But § 3553(a)(2)(A) does authorize a sentencing court to impose a nonguideline sentence if the court concludes the guideline range does not adequately "reflect the seriousness of the offense." While an adjustment based on a factor that was already built into the guideline calculation may challenge the overall uniformity of sentences under § 3556(a)(6), any tension between subsection (a)(2)(A) and subsection (a)(6) can be resolved by the district court in light of all the facts before it, as long as it does so reasonably. *See Cage*, 451 F.3d at 595 ("The problem with the sentencing decision, however, is not in

-10-

the consideration of these factors; it is in the weight the district court placed on them.").

Here, the question is whether the district court's upward deviation from the Guidelines was reasonable. The Guidelines recognize the usual calculation may be inadequate if "reliable information indicates that the defendant's criminal history substantially under-represents the seriousness of the defendant's criminal history." USSG § 4A1.3. Moreover, "the criminal history score is unlikely to take into account all the variation in the seriousness of criminal history that may occur." *Id.*, cmt., Background. Given the district court's careful explanation of its reasoning as to why Shaw's initial guideline calculation underestimated his culpability—including his primary involvement in the bank manager's injuries and his prompt reentry into crime after ending probation—we conclude that there was substantial justification for the court's "divergence from the . . . guideline range." *Cage*, 451 F.3d at 595.

We therefore conclude Shaw's sentence was reasonable under § 3553(a).

### III. Conclusion

Accordingly, we AFFIRM the sentence.